1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

SHARON A. HELSEL,                  )        3:13-cv-00135-MMD-WGC
                                   )
            Plaintiff,             )
                                   )        **REPORT AND RECOMMENDATION**
    vs.                            )        **OF U.S. MAGISTRATE JUDGE**
                                   )
                                   )
CAROLYN W. COLVIN,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)

        This Report and Recommendation is made to the Honorable Miranda M. Du, United

States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is

Plaintiff Sharon A. Helsel's Motion for Remand and/or Reversal. (Doc. # 14.)[1] Defendant

Commissioner filed an opposition to Plaintiff's motion (Doc. # 21), and a cross-motion to

affirm the Commissioner's decision (Doc. # 22).[2] After a thorough review, the court

recommends that Plaintiff's motion be denied, and that the Commissioner's cross-motion to

affirm be granted.

///

///

///

_____

[1]        Refers to court's docket number.

[2]        These documents are identical but were separately docketed by the Clerk. For simplicity, all
references to arguments raised in both the opposition and motion will be to Doc. # 21, as it is first in order.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

At the time of the Commissioner's final decision, Plaintiff was a fifty-four year old woman who had a high school education and attended beauty school, and previously worked as a hairstylist for nineteen years. (Administrative Record (AR) 156, 160.)

On January 4, 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging that she became disabled on July 31, 2009. (AR 118.) Plaintiff alleged disability due to status-post cervical discectomy and fusion (neck) and status-post  right carpal tunnel disease. (AR 155.) The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 73-74.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ) to challenge the Commissioner's determination. (84-86.)

On October 6, 2011, Plaintiff, represented by counsel, appeared and testified at the hearing before the ALJ. (AR 31-72.) The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on November 18, 2011, finding Plaintiff was not disabled pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. (AR 17-26.) Plaintiff appealed the decision, and the Appeals Council denied review. (AR 1-5.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the ALJ's decision to the district court. (Doc. # 14.) Plaintiff argues that the ALJ improperly rejected a portion of the opinion of examining physician Troy Ross, M.D. (*Id.* at 6-9.) In addition, she argues that the ALJ improperly discredited Plaintiff's own allegations and testimony. (*Id.* at 9-14.) The Commissioner disputes these contentions, arguing that the ALJ properly rejected Dr. Ross's assessment of Plaintiff's ability to stand and/or walk and properly discredited Plaintiff's own testimony and allegations. (Doc. # 21.)

# II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r*

*Soc. Sec. Admin.*, --- F.3d ---, 2014 WL 241873, at *3 (9th Cir. Jan. 23, 2014); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 2014 WL 241873 at *3 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 2014 WL 241873, at *3 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Id.* (citation and internal quotation marks omitted). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citations omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. *See* 20 C.F.R. § 404.1512(a)*; Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423 (d)(1)(A).

### III.  DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520*; see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of

3

disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4)*; see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment listed as or the equivalent of one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); *compare Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the

national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 2014 WL 241873, at *3. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress-physical ability, age, education, and work experience-and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of

1  disabled or not disabled based on the number of jobs in the national economy in that

2  category. *Id.*

3  The ALJ may not rely solely on the Grids unless they accurately and completely

4  describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir.

5  1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the

6  claimant suffers from non-exertional limitations that are "sufficiently severe so as to

7  significantly limit the range of work permitted by his exertional limitation."[3] *Hoopai,* 499

8  F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a

9  nonexertional limitation alone is severe (at step two of the sequential process) (absent any

10  exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at

11  step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not

12  accounted for in the grid[s]." *See id.* at 1076.

13  If, at step five, the ALJ establishes that the claimant can do other work which exists

14  in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if

15  the ALJ determines the claimant unable to adjust to any other work, the claimant will be

16  found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v.*

17  *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of

18  'disabled' under the five-step inquiry does not automatically qualify a claimant for disability

19  benefits." *Bustamante,* 262 F.3d at 954.

20  **B. ALJ's Findings in this Case**

21  **1. Step One**

22  In the present case, the ALJ applied the five-step sequential evaluation process and

23  found, at step one, that Plaintiff had not engaged in substantial gainful activity from the

24  alleged onset date of July 31, 2009. (AR 19.)

25  

26  [3]It is important to note that "satisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations

27  are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

28

**2. Step Two**

At step two, the ALJ found that it was established that Plaintiff suffered from the following severe impairments: status-post cervical discectomy and fusion and status-post right carpal tunnel release, meaning that they cause significant limitations in Plaintiff's ability to perform basic work activities. (AR 19.) The ALJ related that Plaintiff was injured in a 1995 motor vehicle accident, and was subsequently diagnosed with a minimally displaced hangman's fracture of C2 and treated in a collar. (AR 19.) In the early 2000s, she developed progressive neck pain and left-sided shoulder pain radiating down her arm. (*Id.*) He also had tingling in her left fifth digit and lateral aspect of the forearm. (*Id.*) An MRI on December 9, 2004, showed degenerative disc disease at C5-C6 and C6-C7 and spondylitic changes at C5-C6 as well as C6-C7. (AR 19-20.) Physical therapy caused more pain, and Plaintiff underwent anterior cervical discectomy and fusion at C5-C6 and C6-C7 and instrumental fusion at C5-C7 in May 2005. (AR 20.)

Plaintiff's symptoms improved, though she complained of right arm tingling, numbness and decreased strength. (AR 20.) She was treated for right carpal tunnel disease, but her symptoms returned. (AR 20.) In October 2005, she underwent right carpal tunnel release. (AR 20.) She did well, but experienced increased numbness and tingling in her hands with heavy lifting. (AR 20.)

**3. Step Three**

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21-22.)

**4. Step Four**

At step four, the ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that she can never climb ladders/ropes/scaffolds or crawl, is limited to no more than occasional right-sided pushing and pulling, climbing of stairs/ramps, balancing, stooping, kneeling and crouching. (AR 22.)

The ALJ further found Plaintiff was limited to no more than occasional rotation, flexion, and extension of the neck, as well as right-sided occasional handling, fingering, feeling, and reaching in all directions. (AR 22.) Finally, the ALJ determined Plaintiff must avoid concentrated exposure to vibration, and all exposure to unprotected heights and hazardous/moving machinery. (AR 22.)

In view of Plaintiff's RFC and consultation with a vocational expert, the ALJ determined Plaintiff was capable of performing past relevant work as a telemarketer, which does not require the performance of work-related activities precluded by Plaintiff's RFC. (AR 24.)

Based on this finding, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. (AR 25.)

**5. Step Five**

Notwithstanding the determination that Plaintiff could perform past relevant work as a telemarketer, the ALJ said alternatively, considering Plaintiff's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy which Plaintiff could also perform. AR 25-26.)

Here, the ALJ noted that Plaintiff's ability to perform the full range of light work was impeded by additional limitations, and as such, the vocational expert was asked whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience and RFC. (AR 26.) The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as an office worker (light, unskilled work with SVP of 2) or a parking lot attendant (light, unskilled work with SVP of 2). (AR 26).

Thus, on this additional basis, the ALJ determined Plaintiff was not disabled.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C. The ALJ's Rejection of the Standing/Walking Portion of the Consulting Physician's Assessment**

     **1. Plaintiff's Position**

Plaintiff argues that the ALJ impermissibly rejected a portion of the consultative physician's opinion. (Doc. # 14 at 6-9.) Plaintiff points out that the consultative physician, Dr. Ross, performed an examination of Plaintiff in February 2010. (*Id*. at 6, citing AR 254.) While Dr. Ross observed Plaintiff had a normal gait and station, he observed she had an extremely limited range of motion in the neck with moderately limited flexion, and reported: "[l]ifestyle limiting ROM of the neck with chronic pain subsequent to traumatic fracture and ACDF" as well as "[b]ilateral upper extremity pain and slight left upper extremity weakness subsequent to a traumatic neck injury." (*Id*.) Dr. Ross opined Plaintiff had the ability to stand and/or walk at least two hours in an eight-hour workday, sit for four hours in an eight-hour workday, must alternate between standing and sitting and could lift twenty pounds occasionally and ten pounds frequently. (*Id*.) He further opined Plaintiff could occasionally climb ramps/stairs, balance, stoop, bend, kneel, crouch and squat, but never climb ladders, scaffolds or crawl. (*Id*.) In addition, he opined Plaintiff retained limitations in the ability to reach, finger, and handle objects. (*Id*., citing AR 251-52.)

Plaintiff points out the discrepancy between Dr. Ross's opinions and those of State agency, non-examining physician, Dr. Nickles. (*Id*.) Dr. Nickles opined Plaintiff could lift and carry twenty pounds occasionally, and ten pounds frequently, could sit for six hours in an eight-hour work day and stand six hours in an eight-hour workday. (*Id*.) He found she could frequently balance, occasionally climb ramps/stairs, stoop, kneel, and crouch, but never climb ladders or crawl. (*Id*. at 6-7.) He found Plaintiff could occasionally reach bilaterally, handle and finger with the left hand, feel with the right hand, and frequently finger and handle with the right. (*Id*. at 7.) This position was affirmed by a second, State agency non-examining physician. (*Id*.)

Plaintiff acknowledges that the ALJ assigned weight to both Dr. Ross and Dr. Nickles, but did not accept Dr. Ross's standing and walking assessment because Plaintiff exhibited normal gait, was able to squat, and exhibited normal range of motion of the back and legs with normal strength and sensation in the legs at the consultative examination and because the record as a whole did not support such limitations. (*Id.*)

Plaintiff takes issue with the ALJ's rejection of Dr. Ross's assessment of Plaintiff's standing and walking limitations. (*Id.*)

First, Plaintiff argues that the opinion of an examining physician is entitled to greater weight than a non-examining physician because the examining physician has had the opportunity to observe and assess the patient's impairments. (*Id.*) An ALJ may only give greater weight to a non-examining physician's opinion when there is significant evidence in the record which supports the opinion. (*Id.*) As such, the opinion of an examining physician can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. (*Id.*)

Plaintiff acknowledges that she exhibited normal gait at the consultative examination, but argues that she clearly exhibited issues with her neck based on her extremely limited range of motion. (*Id.* at 7-8.) She likewise acknowledges that she presented with no musculoskeletal complaints on occasion but she still exhibited muscle spasms when tested, indicating she was not exaggerating her symptoms. (*Id.* at 8.) She also notes other medical records which previously indicated she walked with a limp and had requested a walker for walking when exercising. (*Id.*)

Plaintiff maintains that a "[l]ifestyle limiting ROM of the neck with chronic pain," as Dr. Ross described it, would realistically interfere with her ability to stand and walk for six hours in an eight-hour workday and with sitting for longer periods due to the natural support the neck needs. (*Id.*)

Plaintiff concludes that the ALJ erred by failing to articulate legally sufficient reasons for rejecting Dr. Ross's opinion regarding sitting and standing. Plaintiff states that the

significance of this error manifests itself when one considers that the vocational expert testified that an individual retaining the same residual functional capacity adopted by the ALJ, but limited to standing and walking for four hours, and sitting for four hours, would be unable to perform work that exists in significant numbers in the national economy. (*Id.* at 8-9.)

As such, Plaintiff requests that the court credit Dr. Ross's opinion as true, and find Plaintiff disabled, reversing the Commissioner's decision and awarding the immediate payment of benefits. (*Id.* at 9.)

**2. Commissioner's Position**

The Commissioner, on the other hand, argues that the ALJ fully considered Dr. Ross's assessment of Plaintiff's functional abilities, and consistent with Dr. Ross's opinion, found Plaintiff retained the RFC to occasionally lift and/or carry twenty pounds, to frequently lift and/or carry ten pounds, occasionally climb ramps/stairs, balance, stoop, kneel, and couch, but never climb ladders or scaffolds or crawl. (Doc. # 21 at 4-5.) The Commissioner contends that the ALJ properly declined to accept Dr. Ross's assessment that Plaintiff could stand/walk two hours (but not six hours) in an eight-hour work day, finding that the limitation was not supported by the objective evidence and was inconsistent with other substantial evidence in the record. (*Id.* at 5.)

First, The Commissioner asserts that Dr. Ross's standing/walking assessment was not supported by the objective evidence in the record, and specifically by his own findings in his consultative examination of Plaintiff. (*Id.*) The Commissioner points out that Dr. Ross noted in his examination of Plaintiff that she exhibited normal gait and station, could squat and return to standing without assistance, had a normal range of motion in her back, and exhibited normal strength and sensation in her lower extremities. (*Id.*) He also noted that she did not require an assistive device for ambulation. (*Id.*) As such, the ALJ concluded that Dr. Ross's standing/walking assessment was not supported by these objective findings. (*Id.*)

Second, the Commissioner points out that the ALJ recognized Dr. Ross's examination revealed limitations in Plaintiff's range of motion in her neck, and accounted for them in the RFC assessment by restricting Plaintiff to no more than occasional rotation, flexion, and extension of her neck and no more than occasional right-sided handling, fingering, feeling and reaching in all directions. (*Id*. at 5-6.)

Third, the Commissioner asserts that both State agency physicians agreed Plaintiff could stand and/or walk six hours in an eight-hour workday. (*Id*. at 7.) The Commissioner argues that the ALJ properly gave more weight to their opinions regarding Plaintiff's standing/walking abilities because the objective evidence supported their conclusions. (*Id*.)

Finally, the Commissioner contends that substantial evidence supports the ALJ's finding of no disability in this action and should be upheld. (*Id*.)

**3. Legal Standard**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). Various medical sources and opinions, including those of treating physicians and non-examining physicians are taken into account by the ALJ, and the final responsibility for deciding issues on the nature and severity of impairments is reserved to the ALJ. *See* 20 C.F.R. § 404.1527(d)(2).

A treating physician's assessment is granted substantial weight. *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation and citation omitted). However, the ALJ is not required to accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Id.* (internal quotation and citation omitted). "When evidence in the record contradicts the [assessment] of the treating physician, the ALJ must present specific and legitimate reasons for discounting [or rejecting] the treating physician's [assessment], supported by substantial evidence". *Id.* (internal quotation and citations omitted). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his or her interpretation thereof, and making findings. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ is not required to explicitly use any "magic words" (i.e. "I reject Dr. X's opinion …") to reject the opinion of a treating physician. *See Magallanes*, 881 F.2d at 755. The ALJ must set forth why his or her interpretations of the evidence are correct and the treating physician's are not. *See Embrey v. Bowen*, 849 F.2d 418, 421–422 (9th Cir. 1988). Furthermore, the reports of consultative physicians called in by the ALJ may serve as substantial evidence. *Magallanes*, 881 F.2d at 752.

The Ninth Circuit has identified several reasons for discounting a treating physician's assessment which it finds legitimate. An ALJ may discount a treating physician's assessment if it is contradicted by the physician's own medical records. *Tommasetti*, 533 F.3d at 1041 (citation omitted). An ALJ may also discount a treating physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Id.* (internal quotations and citation omitted). Additionally, an ALJ may discount a treating physician's assessment that is in conflict with testimony from the claimant himself. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (discussing *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995)). Further, an ALJ may discount a treating physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

### 4. Analysis

#### a. ALJ's Findings

The ALJ pointed out that on March 9, 2010, a State agency physician, Dr. Nickels, opined that Plaintiff was capable of light work with exertional, manipulative, and environmental limitations: that Plaintiff was never capable of balancing and crawling, no more than occasional pushing and pulling, climbing of ramp/stairs, stooping, kneeling, and crouching, and no more than frequent balancing. (AR 22.) Dr. Nickels also opined Plaintiff was limited in reaching, handling, fingering, and feeling and must avoid concentrated exposure to vibration and all exposure to hazards. (AR 22.) Dr. Nickels stated Plaintiff was

capable of no more than occasional bilateral upper extremities overhead reaching, left-upper extremity handling and fingering, and right upper extremity feeling. (AR 22.) This was based on a review of the medical record, including Plaintiff's history of cervical fusion and carpal tunnel release, and the consultative examiner's report. (AR 22-23.)

On July 12, 2011, another State agency physician affirmed this residual functional capacity. (AR 23.) This was based on no new medical records submitted to support Plaintiff's allegations of worsening symptoms. (AR 23.)

In February 2010, Plaintiff underwent a consultative examination (by Dr. Ross). (AR 23.) The consultative examiner found Plaintiff exhibited extremely limited neck rotation and moderately limited neck flexion. (AR 23.) The examiner opined Plaintiff was able to stand and/or walk at least two hours in an eight-hour workday, sit four hours in an eight-hour workday, and must alternate standing and sitting. (AR 23.) The consultative examiner also found Plaintiff could never climb ladders/scaffolds or crawl, and only occasionally climb ramps/stairs, balance, stoop/bend, kneel and crouch/squat. (AR 23.) Finally, the examiner found Plaintiff was limited in her ability to reach, finger, and handle objects. (AR 23.)

After reviewing this evidence, the ALJ stated that "some weight" was assigned to both the State agency physicians' residual functional capacity assessments, as well as the February 2010 assessment by the consultative examiner. (AR 23.) The ALJ concluded that the medical record as a whole supported the State agency physicians' opinions that Plaintiff was capable of light work with exertional, manipulative, and environmental limitations. (AR 23.)

The ALJ pointed out that during the consultative examination, Plaintiff exhibited a normal gait and station, was able to squat and return to standing without assistance, had a normal range of motion of her back and lower extremities, and normal strength and sensation of her lower extremities. (AR 23.)

Next, the ALJ stated that more weight was being assigned to the consultative examiner's opinions regarding Plaintiff's limited range of motion of her neck, decreased

15

sensation of her right upper extremity, decreased strength of her left upper extremity, as well as the medical record as a whole. (AR 23.)

### b. Discussion

Here, the ALJ met her burden of showing specific, legitimate reasons for discounting consultative examining physician, Dr. Ross's, assessment of Plaintiff's ability to stand and/or walk. The ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence in declining to accept Dr. Ross's assessment that Plaintiff could only sit and/or stand for two hours (but not six hours) in an eight-hour work day.

While Dr. Ross found Plaintiff could only sit and/or stand for two hours in an eight-hour work day, the ALJ pointed out that Dr. Ross's own examination revealed that Plaintiff exhibited a normal gait and station, was able to squat and return to standing without assistance, had a normal range of motion in her back and lower extremities, and normal strength and sensation in her lower extremities. (AR 23.) The ALJ properly announced specific and legitimate reasons for discounting Dr. Ross's assessment of Plaintiff's ability to stand or walk by showing contradictions with that assessment in Dr. Ross's own evaluation of Plaintiff.

While Plaintiff argues that the ALJ failed to account for Dr. Ross's findings regarding her limited range of motion in her neck, that is not accurate. The ALJ specifically found that more weight should be given to Dr. Ross's opinions regarding Plaintiff's limitations with her neck, as they were supported by her limited range of motion in her neck, and decreased strength in the right upper extremities. (AR 23.) The Commissioner is correct that the limited range of motion in the neck was properly accounted for in the ALJ's determination of Plaintiff's RFC in finding that she is limited to no more than occasional rotation, flexion, and extension of the neck, as well as right-sided occasional handling, fingering, feeling and reaching in all directions. (AR 22.)

As such, the ALJ met his burden of showing specific, legitimate reasons supported by substantial evidence for rejecting Dr. Ross's assessment of Plaintiff's ability to stand and/or

1  walk. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that ALJ properly

2  rejected treating physician's assessment that claimant could only stand or walk for fifteen

3  minutes at a time when the treating physician's own clinical notes contradicted this

4  assessment).

5  **D. Plaintiff's Credibility**

6        **1. Plaintiff's Position**

7        Next, Plaintiff argues that the ALJ improperly discredited Plaintiff's own testimony.

8  (Doc. # 14 at 9-14.)

9        Plaintiff argues that once she demonstrates the existence of a condition that would

10  cause some degree of pain and dysfunction so as to limit her activity, the burden shifts to the

11  Commissioner to articulate specific and legitimate reasons for rejecting the pain and

12  limitation testimony. (*Id.* at 10.) In the absence of evidence of malingering, the ALJ must

13  articular clear and convincing reasons for rejecting the pain and limitation testimony. (*Id.*)

14  Plaintiff contends that the ALJ failed to do so. (*Id.*)

15        Plaintiff says that the ALJ discredited her because the physical and diagnostic testing

16  did not support her allegations of pain. (*Id.* at 12.) She states that while her MRI showed

17  normal anatomic alignment, objective testing also revealed neck spasm on several visits, and

18  the MRI also showed straightening of the cervical lordosis which may be associated with

19  spasm. (*Id.*) Thus, she contends she has proven her impairments may cause her pain.

20        Plaintiff goes on to argue that once she has produced objective medical evidence of an

21  impairment, she need not produce objective medical evidence of the pain itself. (*Id.*) While

22  the ALJ may consider whether a lack of objective medical evidence supports the degree of

23  limitation, this cannot be the sole basis for discounting pain testimony. (*Id.* at 13.)

24        The ALJ claimed Plaintiff's lack of musculoskeletal complaints to her treating

25  physician were inconsistent with her allegations, but Plaintiff asserts that while her records

26  did not indicate musculoskeletal complaints they did indicate paravertebral muscle spasm

27  with painful range of motion in the back and spine. (*Id.*) She points out that she was

28

1  diagnosed with radiculopathy in October 2011: C& probably foraminal hypertrophy, related
2  to radiating pain down the low back at the right arm. (*Id.*)

3       While the ALJ pointed out that her neck pain was controlled with medication, Plaintiff
4  argues this does not support a conclusion that she could return to work. (*Id.*)

5       The ALJ also noted that Plaintiff did not report disrupted sleep, but she says that by
6  August 2012 she reported significant sleep difficulties. (*Id.*)

7       In sum, Plaintiff contends that the ALJ failed to articulate legally sufficient reasons
8  for rejecting Plaintiff's testimony and as such, the court should deem that testimony of true,
9  find her disabled and award benefits due to her inability to sit or stand for long periods of
10 time. (*Id.* at 14.) Alternatively, Plaintiff requests that the matter be remanded for further
11 analysis of Plaintiff's testimony. (*Id.*)

12      **2. The Commissioner's Position**

13      First, the Commissioner asserts that Congress prohibits granting disability benefits
14 based on a claimant's subjective complaints (Doc. # 21 at 8), but acknowledges that the ALJ
15 is required to make specific credibility findings that are properly supported by the record
16 (*id.*).

17      Next, the Commissioner argues that while the Ninth Circuit has asserted that an ALJ
18 must provide "clear and convincing" reasons for rejecting the credibility of a claimant's
19 subjective testimony of disability, this standard exceeds the requirements set forth by
20 Congress and the Commissioner and appears to be improper. (*Id.*) Instead, the Commissioner
21 contends that the court need only conclude that the ALJ's findings are supported by
22 substantial evidence. (*Id.*)

23      The Commissioner maintains that the ALJ articulated sufficient reasons based on
24 substantial evidence for rejecting Plaintiff's testimony of disabling pain less than fully
25 credible to the extent the ALJ suggested limitations beyond those found in the RFC
26 assessment. (*Id.* at 9.)

27

28

The Commissioner points out that the diagnostic and physical testing did not support Plaintiff's claim of disabling functional limitations. (*Id*.) The Commissioner acknowledges that lack of medical evidence cannot form the sole basis for discounting symptom testimony, but it is a factor the ALJ may consider in his credibility analysis. (*Id*) Here, Plaintiff's most recent x-ray of her cervical spine showed normal alignment post cervical spine fusion, and Dr. Ross reported Plaintiff exhibited a full range of motion in her upper extremities, and almost full strength in that region, with full strength and intact sensation in her lower extremities. (*Id*.) Dr. Ross also noted normal gross and fine motor function in the hands and fingers, and normal functional range of motion in the back. (*Id*.) He additionally reported normal gait and station and that Plaintiff could squat and return to standing without assistance. (*Id*.) Plaintiff's treatment records consistently showed she had no range of motion restrictions in her back and spine, normal strength in her upper extremities and no pain radiating to the upper extremities. (*Id*.)

The Commissioner acknowledges Plaintiff exhibited some clinical abnormalities in her examinations, but contends the ALJ accounted for them in the RFC assessment by restricting her to only occasional postural movements; rotation, flexion and extension of the neck; and right-sided handling, fingering, feeling and reaching in all directions. (*Id*. at 9-10.)

The Commissioner further argues that the ALJ permissibly found that Plaintiff's statements about her improvement with medication were inconsistent with her allegations of disability. (*Id*. at 10.) The Commissioner asserts that the Ninth Circuit has ruled that where impairments can be treated effectively, they are not disabling for purposes of determining eligibility for social security benefits. (*Id*.) Plaintiff reported several times that her pain was well controlled with medication. On various occasions, she noted no upper extremity weakness or numbness, and no disrupted sleep or musculoskeletal concerns. (*Id*.)

In addition, the Commissioner contends that Plaintiff made other inconsistent statements in the record that diminished the credibility of her allegations. (*Id*.) She reported she could not drive due to walking difficulties, but later admitted that she was recently

1   stopped for driving with a broken tail light and was placed in jail for driving on a suspended

2   license. (*Id*.) In addition, she testified she could not do household chores, but reported that

3   she did laundry, sweeping and dusting once a week. (*Is*.) These inconsistencies revealed

4   Plaintiff may not be entirely reliable. (*Id*.)

5        Finally, the Commissioner asserts that the ALJ reasonably rejected Plaintiff's

6   complaints of greater restriction than what she found based on Drs. Nickels and Karelitz's

7   opinion regarding Plaintiff's physical capability. (*Id*. at 11.) These doctors opined that Plaintiff

8   could perform a range of light weight work with postural, manipulative and environmental

9   limitations. (*Id*.) The ALJ added more restrictions for Plaintiff's neck to account for her

10  cervical impairment. (*Id*.)

11       Accordingly, the Commissioner argues that the court should affirm the ALJ's decision.

12  **3. Legal Standard**

13       "[A] claimant's credibility becomes important at the stage where the ALJ is assessing

14  residual functional capacity, because the claimant's subjective statements may tell of greater

15  limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th

16  Cir. 2001) (citing SSR 96-7p (1996)). Thus, a claimant's credibility is often crucial to a

17  finding of disability. The ALJ is responsible for determining credibility. *Meanel v. Apfel*, 172

18  F.3d 1111, 1113 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *see*

19  *also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

20       In general, when deciding to accept or reject a claimant's subjective symptom

21  testimony, an ALJ must engage in two steps: an analysis under *Cotton v. Bowen*, 799 F.2d

22  1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the claimant's

23  testimony regarding the severity of his or her symptoms. *Smolen v. Chater*, 80 F.3d 1273,

24  1281 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529 (adopting two-part test).

25       Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms

26  "must produce objective evidence of an underlying impairment 'which could reasonably be

27  expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341,

28

344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A)); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010)*; Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis original); *see also* 20 C.F.R. § 404.1529(a)-(b).

"Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 693 (9th Cir. 2009).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell,* 947 F.2d at 345 (quoting *Elam v. Railroad Retirement Bd*., 921 F.2d 1210, 1215 (11th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks and citation omitted).

When analyzing credibility, an ALJ may properly consider medical evidence in the analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *see also Batson v. Comm'r of Soc. Sec*., 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence).

An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

### 4. Analysis

Here, under the first prong of the analysis on claimant credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. (AR 23.) Thus, the court's inquiry is focused (despite the Commissioner's urging to the contrary) on whether the ALJ set forth specific, clear and convincing reasons for rejecting Plaintiff's testimony about her limitations.

The ALJ pointed out that Plaintiff initially alleged neck injury and carpal tunnel limited her ability to work, and alleged an inability to lift over fifteen pounds, bend from the waist, lift her hands overhead, or sit or stand for long periods. (AR 23.) She also alleged weakness in her extremities and a severe headache. (AR 23.) She subsequently alleged, as of May 2010, a burning neck pain radiating into her shoulder, headaches, muscle spasms, and reduced range of motion. (AR 23.) She claimed these symptoms affected her whole left side and her ability to stand, walk, lift, and carry things for long periods of time. (AR 23.) She further alleged that as of May 2010, she was experiencing ongoing pain and reduced grip strength, causing her to drop things, caused by the carpal tunnel surgery four years earlier. (AR 23.)

The ALJ then asserted that at the hearing, Plaintiff testified she uses a cane and walker and can no longer walk a quarter of a mile, that she has trouble bending over and does not do any household chores. (AR 23-24.) She also testified that she had trouble sleeping and woke up every hour. (AR 24.)

First, the ALJ concluded that the diagnostic and physical testing did not fully support Plaintiff's allegations. (AR 24.) A February 2010 diagnostic examination of Plaintiff's cervical spine showed normal anatomic alignment of the cervical spine without subluxation, status post anterior cervical spine fusion. (AR 24.) A physical examination at the same time showed Plaintiff had a full range of motion in her right and left upper extremities. (AR 24.) It also demonstrated that she had normal gross and fine motor function in both the right and left hands and fingers. (AR 24.)

Second, the ALJ stated that Plaintiff's own subjective complaints were inconsistent with her subsequent allegations of disability. (AR 24.) The ALJ noted that during the spring and summer of 2011, Plaintiff reported no musculoskeletal complaints to her treating physician. (AR 24.) On June 20, 2011, she reported that her pain was controlled well with Norco and that she was able to function daily without morphine. (AR 24.) In August 2011, she did not complaint of pain or numbness radiating to her upper extremities. (AR 24.) Nor did she report upper extremity weakness. (AR 24.) During physical examinations in July and August 2011, she exhibited normal muscle strength in her upper extremities. (AR 24.) In September 2011, she again reported that her pain was controlled with medication. (AR 24.) She did not complain of radiation to her upper extremities or upper extremity weakness/numbness at that time. (AR 24.) In October 2011, she again reported that her neck pain was well controlled with medication, and did not mention pain or weakness in her upper extremities. (AR 24.) Nor did she report disrupted sleep at that time. (AR 24.) She further failed to show a restricted range of motion, and in fact, showed normal muscle strength in the upper extremities. (AR 24.) She reported at that time that she did not have disrupted sleep. (AR 24.)

1    The ALJ noted that the inconsistent information provided by Plaintiff might not have
2    been the result of a conscious intention to mislead, but nevertheless suggested that the
3    information she provided may not be entirely reliable. (AR 24.)

4    The court finds that the ALJ properly set forth specific, clear and convincing reasons
5    for making an adverse credibility determination regarding Plaintiff's testimony and
6    allegations of her limitations. The ALJ relied on contradictions between Plaintiff's testimony
7    and allegations of her limitations and the objective medical evidence. The ALJ's reliance was
8    on the objective medical evidence was not improper because it was not the sole basis for the
9    ALJ's adverse credibility determination. Instead, the objective medical evidence was one
10   factor the ALJ considered. In addition, the ALJ considered various inconsistencies, which
11   were specifically pointed out, in Plaintiff's own subjective complaints in making the adverse
12   credibility determination.

13   Accordingly, the court finds that the ALJ did not err in making an adverse credibility
14   determination as to the Plaintiff.

15   ### IV. CONCLUSION

16   After carefully reviewing the record as a whole, the district court should find there is
17   substantial evidence to support the ALJ's determination and the ALJ's decision should be
18   affirmed.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

28

24

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand and/or Reversal (Doc. #14) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that defendant Commissioner's Cross-Motion to Affirm the Commissioner's Decision (Doc. #21) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

DATED:  February 5, 2014

_____

**WILLIAM G.  COBB**
**UNITED STATES MAGISTRATE JUDGE**